UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and ) <br> THE STATE OF INDIANA, ) <br> ) <br>       Plaintiffs, ) <br> ) <br>       and ) <br> ) <br> THE NATURAL RESOURCES DEFENSE ) <br> COUNCIL, HOOSIER ENVIRONMENTAL) <br> COUNCIL, SIERRA CLUB, SAVE THE ) <br> DUNES, SUSAN ELEUTERIO, and TOM ) <br> TSOURLIS, ) <br> ) <br>       Plaintiff-Intervenors, ) <br> ) <br> v. ) <br> ) <br> BP PRODUCTS NORTH AMERICA INC. ) <br> ) <br>       Defendant. ) | Civil No. 2:12 CV 207 <br><br> Chief Judge Simon <br><br> Magistrate Judge Rodovich |

**OPINION AND ORDER**

On May 23, 2012, the government brought this action, on behalf of the United States Environmental Protection Agency, against defendant BP Products North America Inc. ("BP Products"), pursuant to the Clean Air Act, 42 U.S.C. §§ 7401 *et seq.*, and Emergency Planning and Community Right-to-Know Act ("EPCRA"), 42 U.S.C. §§ 11001 *et seq.* [DE 1.] The State of Indiana was granted leave to intervene in the case as well. [DE 5 and 6.] Before the Court is the government's unopposed motion to enter a consent decree [DE 7], along with its brief in support of the motion [DE 8]. For the reasons stated below, that motion will be granted and the consent decree will be entered.

1

## BACKGROUND

This action arises from alleged violations of the Clean Air Act and EPCRA by BP Products at its petroleum refinery in Whiting, Indiana (the "Whiting Refinery"), BP Products' second largest refinery in the U.S. In 2005, the EPA discovered evidence of Clean Air Act violations during an inspection of the Whiting Refinery. As a result of the inspection and a review of information provided by the company, the EPA issued several Findings of and Notices of Violation to the company. Among the violations alleged by the EPA were claims that BP Products, as part of an expansion project to enable the refinery to process Canadian tar sands and crude oil, modified certain process units at the refinery in violation of the Clean Air Act's Prevention of Significant Deterioration and Non-Attainment New Source Review requirements.

The parties have reached a compromise to address these alleged violations, which is embodied in the Consent Decree presently before me. The terms of the Consent Decree require BP Products to perform extensive injunctive relief at the Whiting Refinery in order to prevent Clean Air Act violations in the future and to mitigate excess emissions of harmful air pollutants resulting from its alleged non-compliance. BP Products must also pay a civil penalty of approximately $8,000,000 and perform a Supplemental Environmental Project to monitor for air pollution around the refinery's fenceline.[1]

---

[1]The Whiting Refinery is one of the BP refineries that is subject to related consent decree entered in a separate matter in this district in 2001. *See United States, et al. v. BP Exploration & Oil Co., et al.*, 2:96-CV-095, Consent Decree [DE 130]. That 2001 consent decree has been modified numerous times in the past decade and could have been modified again to incorporate the agreement currently before me in this case. However, because of the broad and comprehensive nature of the injunctive relief agreed upon by the parties, they determined that instead of again amending the related 2001 Consent Decree, a new stand-alone consent decree that applied just to the Whiting Refinery was preferable. The Consent Decree proposed in this action incorporates all remaining obligations and requirements of the 2001 Consent Decree and

Pursuant to Department of Justice policy and the terms of the Consent Decree, public comment on the Consent Decree was invited for a 30-day period, which commenced on May 31, 2012.  *See* 28 C.F.R. § 50.7; Consent Decree, Part XVI, Paragraph 209 (page 116); 77 Fed. Reg. 32,135 (May 31, 2012) (publishing notice soliciting public comments). One public comment, expressing dissatisfaction only with the amount of the penalty recovered under the Consent Decree, was received during the comment period.  [*See* DE 8-1.]   I will discuss this single comment further below, but I agree with the government that it does not support an inference that the Consent Decree is inappropriate, improper, or inadequate.  Additional facts will be included, as relevant, in the discussion section of this decision.

## DISCUSSION

Approval of a consent decree is a judicial act that is committed to the sound discretion of the district court.  *Madison County Jail Inmates v. Thompson*, 773 F.2d 834, 845 (7th Cir. 1985); *see also United States v. BP Amoco Oil PLC*, 277 F.3d 1012, 1019 (8th Cir. 2002), *cert. denied*, 537 U.S. 942 (2002).  Courts, however, should exercise this discretion in a limited and deferential manner, as the fairness of a settlement is "a matter best left to the negotiation between the parties."  *Mars Steel Corp. v. Cont'l Illinois Nat'l Bank and Trust Co. of Chicago*, 834 F.2d 677, 681 (7th Cir. 1987).

Public policy strongly favors settlements of disputes without litigation.  *Donovan v. Robbins*, 752 F.2d 1170, 1177 (7th Cir. 1985); *Metro. Housing Dev. Corp. v. Vill. of Arlington*,

---

its amendments that pertain to the Whiting Refinery.  The parties believe that consolidating the Whiting Refinery's set of Clean Air Act obligations under "one roof" will promote efficiency and ensure consistent oversight of the refinery's compliance.

616 F.2d 1006, 1013 (7th Cir. 1980); *United States v. BP Oil Exploration & Oil Co.*, 167 F. Supp. 2d 1045, 1050 (N.D. Ind. 2001). "[T]he limitations of judicial competence and the desirability of encouraging out-of-court settlements in order to lighten the judicial caseload create a presumption in favor of approving the settlement." *Donovan*, 752 F.2d at 1177. That policy is particularly strong where, as here, a government actor committed to the protection of the public interest has constructed the proposed settlement. *See United States v. George A. Whiting Paper Co.*, 644 F.3d 368, 372 (7th Cir. 2011) (in reviewing a consent decree, "the trial court must defer to the expertise of the agency and to the federal policy encouraging settlement"); *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 84 (1st Cir. 1990). In reviewing consent decrees, courts determine "not whether the settlement is one which the court itself might have fashioned, or considers as ideal, but whether the proposed decree is fair, reasonable, and faithful to the objectives of the governing statute." *Id.*; *see also United States v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409, 1435 (6th Cir. 1991).

Thus, in evaluating whether to approve a consent decree settlement, courts consider the following three factors: (1) fairness, both procedural and substantive, (2) reasonableness, and (3) consistency with applicable law. *George A. Whiting Paper Co.*, 644 F.3d at 372; *In re Tutu Water Wells CERCLA Litig.*, 326 F.3d 201, 207 (3rd Cir. 2003).

As explained below, I find that the proposed consent decree satisfies each of these criteria.

**I.     Procedural Fairness**

A consent decree is procedurally fair if the negotiations in reaching the settlement were open and at arms-length. *In re Tutu*, 326 F.3d at 207 ("A court should 'look to the negotiation

process and attempt to gauge its candor, openness and bargaining balance.'") (quoting *Cannons Eng'g Corp.*, 899 F.2d at 86); *BP Amoco Oil*, 277 F.3d at 1020; *United States v. Davis*, 261 F.3d 1, 23 (1st Cir. 2001).

I find that the proposed consent decree was procedurally fair because, as the government asserts, it resulted from "arms-length negotiations that were conducted in manifest good-faith over a period of several years." [DE 8 at 22.] Moreover, the proposed consent decree was noticed in the Federal Register for a 30-day period, during which public comments were solicited. *See* 77 Fed. Reg. 32,135 (May 31, 2012). Copies of the proposed consent decree were made available by mail and a Department of Justice website:

http://www.justice.gov/enrd/Consent_Decrees.html *Id.*

Moreover, the record contains no evidence that the negotiations were conducted in bad faith or that the proposed consent decree was the product of collusion. Considering these factors, I find that the proposed consent decree is procedurally fair. *Cf. BP Oil Exploration & Oil Co.*, 167 F. Supp. 2d at 1050 (finding procedural fairness satisfied where nothing in the record indicated bad faith or collusion).

## II. Substantive Fairness

A consent decree is substantively fair if its terms are based on comparative fault. *George A. Whiting Paper Co.*, 644 F.3d at 368; *Tutu Wells*, 326 F.3d at 207; *Cannons Eng'g*, 899 F.2d at 87 ("a party should bear the cost of the harm for which it is legally responsible"). The calculation of comparative fault "should be upheld unless it is arbitrary, capricious, and devoid of a rational basis." *Cannons Eng'g*, 899 F.2d at 87.

I find that the proposed consent decree is substantively fair and holds BP Products

accountable for its alleged non-compliance at the Whiting Refinery.  The comprehensive array of injunctive relief required by the decree is estimated to cost BP Products over $400,000,000 to complete.  This injunctive relief will address the fundamental causes of BP Products' alleged violations and will prevent similar non-compliance at the Whiting Refinery in the future.  It will also mitigate excess emissions resulting from the alleged violations.  In addition, BP Products will pay an $8,000,000 civil penalty for its violations and perform a Supplemental Environmental Project worth approximately $2,000,000 to further reduce air pollution in Whiting, Indiana and the surrounding area.  Lastly, BP Products is subject to a stringent set of stipulated penalties that holds it accountable for their future performance under this settlement.

I am satisfied that these terms meet the standards of accountability and corrective justice required under the substantive fairness prong of the analysis.

**III.   Reasonableness**

The evaluation of a consent decree's reasonableness is "a multifaceted exercise." *Cannons Eng'g*, 899 F.2d at 89.  Factors relevant to the evaluation of a consent decree's reasonableness include its likely efficaciousness as a vehicle for cleansing the environment; the extent to which it satisfactorily compensates the public for actual and anticipated costs of remedial and response measures; the extent to which approval of it serves the public interest; and the availability and likelihood of alternatives to the consent decree.  *Id.* at 89-90; *see also United States v. Fort James Operating Co.*, 313 F. Supp. 2d 902, 910 (E.D. Wis. 2004); *BP Exploration & Oil*, 167 F. Supp. 2d at 1053.

Based on a consideration of these factors, I find that the proposed consent decree is reasonable.  The extensive injunctive relief that BP Products will perform will improve air

quality, protect the environment, and address the hazards of its alleged non-compliance.  The Consent Decree requires state-of-the-art pollution controls, as well as improved operations and maintenance practices, that will eliminate thousands of tons of air pollution each year.  In addition, the heightened monitoring and reporting requirements will improve the accuracy of information about the nature and amount of the refinery's emissions, and monitoring will provide the communities most affected by the Whiting Refinery with continuous information about the facility's emissions.  All of these measures will help clean the environment and further the goals of the Clean Air Act.

Entry of the Consent Decree also serves the public interest by providing these environmental benefits more quickly and at less cost than could be achieved through litigation.  The only likely alternative to the Consent Decree would be complex and potentially protracted litigation that would expend limited governmental and judicial resources – a risky proposition with uncertain results.  The reasonableness of this settlement is further confirmed by the endorsement of the various Citizen-Intervenors.  Accordingly, the Consent Decree is in the public interest and is a reasonable settlement.

## IV.     Consistency with the Clean Air Act

In evaluating the proposed consent decree's consistency with the Clean Air Act, I consider the extent to which it comports with the goals of Congress.  *See BP Exploration & Oil*, 167 F. Supp. 2d at 1054.  "Of necessity, consideration of the extent to which consent decrees are consistent with Congress' discerned intent involves matters implicating fairness and reasonableness" and "cannot be viewed in majestic isolation."  *Cannons Eng'g*, 899 F.2d at 90.

The injunctive relief and consequent emissions reductions required by the Consent

Decree will "protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population" – the Clean Air Act's primary purpose.  *See* 42 U.S.C. § 7401(b)(1).  The Whiting Refinery will take further steps to comply with the Clean Air Act and reduce emissions of criteria and hazardous air pollutants.  BP Products will pay a substantial penalty for its non-compliance, which will further deter future Clean Air Act violations both at the Whiting Refinery as well as at other facilities across the nation.  I thus find that the Consent Decree furthers the goals of the Clean Air Act.

## V.     Public Comment

As noted above, the Department of Justice received only one public comment, and no objections have been filed with the Court.  The single public comment expressed dissatisfaction with BP's "lax and negligent operation" and with the $8,000,000 civil penalty, stating that it "should be 20 times $7 million and even that is not enough."  [DE 8-1 at 1.]

This comment does not disclose facts or considerations that indicate that the proposed Consent Decree is inappropriate, improper, or inadequate.  Merely asserting that a higher penalty should have been assessed in this matter, without any further support, does not provide an adequate basis to reject the proposed Consent Decree.  *See Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 531 (5th Cir. 2008); *United States v. Comunidades Unidas Contra La Contaminacion,* 204 F.3d 275, 282 (1st Cir. 2000) (compromise "is a product of judgment": "[w]e are unable to say that the penalty level established by the decree represents an abandonment of judgment by the United States"); *United States v. City of Evansville, Indiana*, 2011 WL 2470670, *6-7 (S.D. Ind. 2011) (entering consent decree over comment objecting to size of civil penalty secured and explaining that "there is nothing in the record that suggests to

the Court that it should second guess [the United States'] informed decision regarding the appropriate penalty to impose in this case").

Accordingly, this single public comment does not provide sufficient reason to deny entry of the Consent Decree.

## CONCLUSION

For the foregoing reasons, I find that the proposed consent decree is fair, reasonable, and consistent with the Clean Air Act's statutory purposes.  Therefore, the government's unopposed motion to enter the proposed consent decree [DE 7] is **GRANTED**.  Accordingly, the Court accepts and enters the government's proposed consent decree [DE 7-1] as an order of the Court. The Clerk is **INSTRUCTED** to **ENTER** this filing [DE 7-1] as the parties' Consent Decree in this matter and to administratively close this case.  The Consent Decree will be entered and effective as of the date of this order.

**SO ORDERED.**

ENTERED:  November 6, 2012

s/ Philip P. Simon.
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT