UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| THE UNITED STATES OF AMERICA and THE STATE OF INDIANA, | ) ) ) |
| Plaintiffs, | ) ) ) |
| *and* | ) ) ) |
| SIERRA CLUB, SAVE THE DUNES, THE NATURAL RESOURCES DEFENSE COUNCIL, THE HOOSIER ENVIRONMENTAL COUNCIL, THE ENVIRONMENTAL INTEGRITY PROJECT, THE ENVIRONMENTAL LAW AND POLICY CENTER, SUSAN ELEUTERIO, and TOM TSOULIS, | ) ) ) ) ) ) ) ) ) ) |
| Intervenor-Plaintiffs, | ) ) |
| vs. | )   CAUSE NO. 2:12CV207-PPS |
| BP PRODUCTS NORTH AMERICA, INC., | ) ) ) |
| Defendant. | ) |

**OPINION AND ORDER**

Defendant BP Products North America operates a petroleum refinery in Whiting, Indiana. In 2012, a Consent Decree was entered as agreed by BPP, the United States, the State of Indiana, and a number of environmental groups acting as intervenor-plaintiffs, to resolve claims of violations of the Clean Air Act and the Emergency Planning and Community Right-to-Know Act at the Whiting Refinery. [DE 9 at 1.] Since that time, two non-material modifications have been made to the Decree. [DE 13, 59.] Then in February

2019, a number of plaintiff-intervenors brought a motion to enforce the Decree, which remains pending before me.

### Motion to Enforce the Consent Decree and Proposed Amendment

The movants alleged that BPP was not in continuing compliance with the Decree's "emissions limitations for particulate matter ('PM') from fluidized catalytic cracking units 500 and 600 ('FCU 500' and 'FCU 600') and related PM performance testing conditions." [DE 21 at 1-2.]  The motion was later amended [DE 40], extensive briefing was completed, and a hearing was held on April 21, 2020 [DE 52].  In August 2020, mediation of the dispute was undertaken with one of the court's Magistrate Judges, which initially appeared to reach an impasse.  [DE 63, 65.]  But the parties persisted in negotiations, with the United States joining the effort, and by September 2021 reported having reached a settlement that would resolve the motion to enforce the Decree.  [DE 85-2 at 4; DE 79.]

In the ensuing months, the parties had to obtain final agreement from additional constituencies including BPP's management, the public officials with the requisite approval authority, and intervenor-plaintiffs that had not been participating in the action since the 2012 negotiations.  [DE 79 at 1-2.]  Because the settlement involved a substantive amendment to the 2012 Consent Decree, public notice and comment had to be undertaken.  All these steps have now been accomplished, and the United States has filed an unopposed motion to enter the Third Amendment to the 2012 Consent Decree.  [DE 85.]

The proposed Third Amendment of course contains the precise terms effectuating the parties' agreement, but its provisions are also set out in some detail in the United States' memo in support of the motion for my approval. [DE 85-2 at 4-7.] I will here provide a summary outline of what the Third Amendment will require of BPP in its operation of the Whiting Refinery.

First, the Third Amendment will require more frequent performance testing, and impose conditions to insure that such testing occurs under representative conditions. Amend. ¶3. To provide additional information on the chemical composition of PM emissions, an ion analysis of all collected condensable PM samples will be performed along with each performance test. *Id*. at ¶6. The Third Amendment imposes clarifying requirements as to when BPP's electrostatic precipitators (a control technology for PM emissions) must be in operation and when they can be permissibly shut down. *Id*. at ¶7. BPP will also be required to undertake a study to evaluate whether ESP operation and emissions testing can be done safely during startup and shutdown of the FCUs. *Id*.

To aid in monitoring ammonia, nitrogen oxides and carbon monoxide, BPP will be required to install ammonia slip, NOx and CO process analyzers on FCU 500 and FCU 600. *Id*. at ¶7. The Third Amendment also requires that BPP must operate continuous emission monitoring systems ("CEMS") and continuous opacity monitoring systems ("COMS") at all times when the FCUs are in operation, subject to a narrow set of exceptions. *Id*. at ¶7. As the government notes, these requirements are "particularly

3

significant for COMS, as opacity is an indicator of the PM emissions that are the subject of this Amendment." [DE 85-2 at 5.]

BPP's reporting requirements are made more rigorous. Under the proposed Third Amendment, the contents of BPP's quarterly reports are expanded to include the ion analysis that will now be performed, as well as data reflecting the updated performance test criteria; an explanation and justification of any ESP shutdown due to an unsafe condition or excessive carbon monoxide level, with an estimate of the total excess emissions involved; and the downtime of the COMS and new process analyzers. Amend. ¶¶ 5, 6, 7, 10. The plaintiff-intervenors, as well as the federal and state environmental agencies, will receive BPP's complete semi-annual reports, subject to redactions of defined Confidential Business Information. *Id.* at ¶9.

In the area of reporting requirements, the Third Amendment also re-emphasizes existing obligations imposed by applicable regulations to make reports concerning deviations of primary power, secondary current, or coke burn limits. The Amendment also highlights BPP's obligation to include certain information in excess emissions reports, including the magnitude of excess emissions, primary power and secondary current values for ESP deviations, and all deviations from primary power and secondary current emissions limitations when coke burn is greater than 1,000 pounds. Amend. ¶2.

The parties have agreed to BPP's payment of a stipulated penalty of $512,450. *Id.* at ¶15. Thirty percent of the penalty will go to the State of Indiana, as the terms of the 2012 Consent Decree require. In addition, the Third Amendment contains new stipulated

4

penalties, in the event that BPP fails to submit required reports, fails to timely install the process analyzers, or fails to operate the process analyzers and the COMS as required by the Amendment. *Id*. at ¶11.

Notice of the proposed amendment was published in the Federal Register on December 8, 2021. [DE 85-2 at 1.] No public comments were received during the 30-day comment period. [*Id*. at 1-2.]

## Review of the Proposed Amendment

The standards and authorities governing approval of a consent decree are set out in my November 6, 2012 order. [DE 9.] In sum, approval is committed to the court's discretion, but courts are to exercise that discretion with a view to the principle that the fairness of a settlement is best left to negotiation among the parties. [DE 9 at 3.] Settlements without protracted litigation are favored by public policy, but a court should satisfy itself that a proposed consent decree is fair, reasonable and supports the objectives of the governing statute. [*Id*. at 3-4.]

The proposed Third Amendment is both procedurally and substantively fair. The parties' agreement was negotiated after many months of arm's length negotiations involving BPP, state and federal authorities, and a subset of the environmental groups who brought the motion to compel as intervenor-plaintiffs. Participants included many of the same individuals who negotiated the provisions of the 2012 Consent Decree governing particulate emissions, who bring years of familiarity with the complex subject

5

matter. Experienced counsel represented each party to the negotiations, and the parties "availed themselves of technical expertise, whether in-house or from outside experts." [DE 85-2 at 9.] Each of the intervenor-plaintiffs that did not actively participate in the negotiation process has reviewed the proposed Third Amendment and has signified its assent by signing. The public notice and comment period produced no comment, much less any opposition. The proposed Third Amendment reflects the parties' weighing of their respective claims and interests against the risks and costs of further litigation, in view of the benefit of a certain and immediate resolution. These circumstances support the conclusion that the agreement is procedurally fair.

The Third Amendment is also substantively fair. By its terms, BPP is held to account for past failures to comply with the original consent decree and will shoulder both a sizeable penalty and the costs of implementing the various injunctive aspects of the agreement, which are designed to reduce the risk of further violations involving emissions of particulate matter.

Largely for those same reasons, the proposed Third Amendment is reasonable. The Third Amendment will increase and improve PM emissions testing, reduce PM emissions by expanding the operation of the ESPs, require the installation of process analyzers to help support PM emission analysis and reduction, and increase reporting and monitoring requirements. In all these respects, the Amendment reasonably addresses the PM and reporting violations alleged in the motion to enforce that renewed the litigation against BPP.

Finally, the Third Amendment is consistent with the public objectives of the Clean Air Act, the environmental policy that is at the heart of both the original consent decree and the intervenor-plaintiffs' challenge to BPP's compliance. The aims of the parties' agreement and the substance of its provisions will support the Clean Air Act's goals of protecting and enhancing air quality to the benefit of public health and welfare, as well as the productive capacity of the nation's population. 42 U.S.C. §7401(b)(1). These goals are furthered by the Amendment's reduction of PM emissions from FCU 500 and FCU 600, as well as by bringing BPP into compliance with the original consent decree and setting new operational and reporting requirements. The imposition of the stipulated penalty on BPP and the provision of additional stipulated penalty provisions should serve as a deterrent against future violations of the Decree as amended.

## Conclusion

Because I find the proposed Third Amendment to the 2012 Consent Decree to be both procedurally and substantively fair, to be reasonable, and to support the objectives of the Clean Air Act, the unopposed motion to approve the amendment will be granted. I will sign the Third Amendment and have it separately entered on the docket. As the intervenor-plaintiffs have agreed to withdraw their previously-filed Motion to Enforce the Consent Decree in light of the parties' agreed resolution, I will direct that the motion be withdrawn. I commend all the parties on their diligent commitment and hard work in achieving a settlement that amply meets the requirements for approval and that I believe is in the public interest.

**ACCORDINGLY:**

The Unopposed Motion to Enter Third Amendment to Consent Decree [DE 85] is GRANTED.

The Third Amendment to Consent Decree is APPROVED and will be entered separately herein.

The Intervenor-Plaintiffs' Amended Motion to Enforce Consent Decree [DE 40] is WITHDRAWN.

**SO ORDERED: January 28, 2022.**   /s/ Philip P. Simon
**UNITED STATES DISTRICT JUDGE**